UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | | |
|---|---|---|---|
| CHARLES JAMES MASSENGALE, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | Nos. | 1:13-CR-20-HSM-CHS-1 |
| | ) | | 1:14-CV-343-HSM |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |

## **MEMORANDUM OPINION**

Before the Court is Petitioner's supplemented motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Docs. 32, 44, 48].[1] The United States responded in opposition to the original pro se petition on January 2, 2015 [Doc. 35], and requested that this Court stay resolution of the supplemented petition pending *Beckles v. United States*, 137 S. Ct. 886 (2017), on August 11, 2016 [Doc. 51]. For the reasons below, Petitioner's supplemented § 2255 petition [Docs. 32, 44, 48] will be **DENIED** and **DISMISSED WITH PREJUDICE**. The United States' request for a stay pending the *Beckles* decision [Doc. 51] will be **DENIED as moot**.

I.   **BACKGROUND**

On January 5, 2013, law enforcement officers found 58.6 grams of cocaine, digital scales, and other drug paraphernalia in Petitioner's vehicle during a traffic stop [Doc. 20]. He

---

[1] On February 11, 2016, this Court appointed Federal Defender Services of Eastern Tennessee ("FDSET") for the limited purpose of reviewing the case to determine whether or not Petitioner is eligible for collateral relief based on the *Johnson* decision. *See* E.D. Tenn. SO-16-02 (Feb. 11, 2016). After receiving notice of a conflict of interest, it appointed substitute CJA counsel to fulfill FDSET's duties under the Standing Order [Docs. 46, 47]. Consistent with that appointment, CJA counsel filed a supplement in support of *Johnson*-based relief [Doc. 48].

subsequently pled guilty to possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) [*Id.*].  At the time, Petitioner had several prior convictions, including thirteen Tennessee convictions for aggravated burglary [Presentence Investigation Report (PSR) ¶¶ 27–30, 35].  Based on three of those prior aggravated burglary convictions, Petitioner was deemed a career offender under Section 4B1.1 of the United States Sentencing Guidelines with an advisory range of 151 to 188 months' imprisonment [*Id.* ¶¶ 21, 59].  This Court sentenced Petitioner to 167 months' imprisonment on December 3, 2013 [Doc. 31].  He did not appeal, but instead filed the instant timely pro se petition for collateral relief on December 1, 2014 [Doc. 32].  On July 2, 2016, Petitioner supplemented that pro se filing with a second ground for collateral relief [Doc. 44].

## II.     MOTION TO DEFER RULING ON PETITION

In addition to the petition, this Court is in possession of the United States' request to defer resolution of the § 2255 motion pending *Beckles v. United States*.  Because the Supreme Court issued a decision in the *Beckles* case on March 6, 2017, the motion to defer will be denied as moot.

## III.    PETITION FOR COLLATERAL RELIEF

### A.    Standard of Review

The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979).  Rather, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)).  He "must clear a significantly

higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

B.   **Analysis**

Petitioner articulates two theories in support of the requested sentencing relief. In the first, he argues that counsel rendered constitutionally deficient assistance when he failed to object to Petitioner's career offender designation based on the Supreme Court's decision in *Descamps v. United States*, 133 S. Ct. 2276 (2013) [Doc. 32].[2] In the second, Petitioner claims that *Johnson v. United States*, 135 S. Ct. 2551 (2015), which held that the residual provision of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), was unconstitutionally vague, removed his convictions for aggravated burglary from Section 4B1.2's definition of "crime of violence" and that, without those convictions, he lacks sufficient predicate offenses for enhancement [Docs. 44, 48].

1.   **Failure to Object to Career Offender Designation**

A petitioner alleging ineffective assistance of counsel must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). *See also, Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *Id.*, as measured by "prevailing professional norms," *Rompilla*

---

[2]   The Supreme Court clarified in the *Descamps* decision how sentencing courts should identify a defendant's offense when the prior conviction involved the violation of a "divisible" statute—one which "comprises multiple, alternative versions of the same crime." 133 S. Ct. at 2284. Specifically, the Court explained that the sentencing court should employ a "modified categorical approach" and "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Id.* at 2281.

3

*v. Beard*, 545 U.S. 374, 380 (2005). Counsel is presumed to have provided effective assistance, and the petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)).

Second, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). If a petitioner fails to prove that he sustained prejudice, the Court need not decide whether counsel's performance was deficient. *See United States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006) (holding that alleged "flaws" in trial counsel's representation did not warrant a new trial where the claims, even if true, did not demonstrate that the jury would have reached a different conclusion).

Section 4B1.1 enhances a defendant's offense level if he or she qualifies as a "career offender," i.e., adult defendant whose offense of conviction is a "crime of violence or controlled substance offense" and who has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S. Sentencing Manual § 4B1.1(a). At the time of Petitioner's sentencing hearing, the provision defined "crime of violence" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary of a dwelling, arson, or extortion, involves the use of

explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). U.S. Sentencing Manual § 4B1.2(a). It defined "controlled substance offense" as any offense "punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S. Sentencing Manual § 4B1.2(b).

To determine whether a particular offense qualifies as a crime of violence under any of the prongs of the above definition, courts must first identify the precise crime of conviction. *Descamps*, 133 S. Ct. at 2285. They do so by employing a "categorical approach," under which they look "only to the statutory definitions—elements—of a defendant's prior offense, and not to the particular facts underlying [each individual] conviction[]." *Id.* at 2283. When the conviction involves violation of a "divisible" statute—one which comprises multiple, alternative versions of the crime—courts resort to the "modified categorical approach" under which they "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Id.* at 2281.

While the Court agrees with Petitioner that the Tennessee aggravated burglary statute is "divisible" under the reasoning of the *Descamps* decision and thus subject to the modified categorical approach, he is correct, *see United States v. Priddy*, 808 F.3d 676, 684 (6th Cir. 2015) (treating Tennessee aggravated burglary as divisible); *United States v. Nance*, 481 F.3d 882, 888 (6th Cir. 2007) (same), it disagrees that this divisibility somehow precluded categorization of Petitioner's prior aggravated burglary convictions as "crimes of violence" in December of 2013.

5

At all relevant times, Tennessee defined aggravated burglary as "burglary of a habitation as defined in §§ 39-14-401 and 39-14-402." Tenn. Code Ann. § 39-14-403(a). The statute incorporates two definitions: burglary as set forth in Tennessee Code Annotated § 39-14-402; and "habitation" as set forth in Tennessee Code Annotated § 39-14-401. The former provides that a person commits burglary when, "without, the effective consent of the property owner," he or she:

> (1) Enters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft, or assault;
>
> (2) Remains concealed, with the intent to commit a felony, theft, or assault in a building;
>
> (3) Enters a building and commits or attempts to commit a felony, theft, or assault; or
>
> (4) Enters any freight or passenger car, automobile, truck trailer, boat, airplane or other motor vehicle with intent to commit a felony, theft or assault or commits or attempts to commit a felony, theft[,] or assault,

Tenn. Code Anno. § 39-14-402(a). The latter defines "habitation" as "any structure, including buildings, module unites, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodation of persons." Tenn. Code. Ann. § 39-14-401(1)(A).

At the time of Petitioner's sentencing hearing, every variant of aggravated burglary qualified as a crime of violence under the Guidelines residual clause, meaning an objection by trial counsel to this Court's use of the same as career offender predicates would have been meritless.

In the context of the residual clause, the categorical approach required that courts ask two questions: "whether the conduct encompassed by the elements of the offense, in the ordinary case, present a serious potential risk of injury to another," *James v. United States*, 550 U.S. 192,

6

2008 (2007); and whether "the risk posed by the crime in question is comparable to that posed by its closet analog among the enumerated offenses," *Sykes v. United States*, 131 S. Ct. 2267, 2273 (2011); *see also United States v. Evans*, 699 F.3d 858, 865 (6th Cir. 2012) ("[The] Sykes [decision] . . . limited the application of . . . [the] 'purposeful, violent, and aggressive' standard, noting that it had no precise textual link to the residual clause and clarifying that [it] should only be applied to crimes premised on strict liability, negligence, or recklessness.").

Every version of Tennessee aggravated burglary involves conduct that presents a serious potential risk of physical injury to another. *See United States v. Brown*, 516 F. App'x 461, 465 (6th Cir. 2013) ("The Tennessee burglary statute … is similar to generic burglary in the degree of risk posed in that there is 'the possibility of a face-to-face confrontation between the burglar and a third party ... who comes to investigate.'" (quoting *James*, 550 U.S. at 203)); *accord Taylor v. United States*, 495 U.S. 575, 588 (1990) ("The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate."); *United States v. Skipper*, 552 F.3d 489, 493 (6th Cir. 2009) ("People do unpredictable things when they unexpectedly encounter burglars in their homes. The burglars often reciprocate. The result is confrontations that present a serious risk of physical injury regardless of the burglar's initial intent."); *United States v. Kirk*, 767 F.3d 1136, 1141 (11th Cir. 2014) ("Regardless of whether a burglar breaches the roofed portion of a structure, . . . [h]e may come into contact with the property's owners, occupants, or caretakers. His close physical presence to the structure could lead an innocent person to investigate why he is there, and his presence alone could reasonably be perceived by any of these persons as threatening. Either the innocent or the burglar might react violently." (citation omitted)). Further, that potential risk of physical injury is just as great

as the risk posed by generic burglary. *See Brown*, 516 F. App'x at 465 ("We see no valid reason to distinguish the risk presented by the Tennessee burglary statute from that presented by generic burglary."); *accord United States v. Moore*, 578 F. App'x 550, 554 (6th Cir. 2014) (finding that burglary under Tenn. Code Ann. § 39-14-403(a)(3) presents the same "risk of confrontation and violence" as generic burglary and, thus, qualifies as a violent felony under the ACCA's residual clause). "The main risk of [generic] burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party—whether an occupant, a police officer, or a bystander—who comes to investigate." *James*, 550 U.S. at 203. The same is equally true of Tennessee aggravated burglary, which by definition can only occur in places "designed or adapted for the overnight accommodation of persons." Tenn. Code. Ann. § 39-14-401(1); *see also Skipper*, 552 F.3d at 492 (finding that Ohio's burglary statue "arguably describes an even more dangerous scenario" than generic burglary because it requires that an innocent person was present or likely present during the offense).[3]

---

[3] The fact that the Supreme Court and the Sixth Circuit routinely deemed non-generic burglary offenses to be violent felonies under the ACCA's residual clause provides additional evidence that Tennessee aggravated burglary categorically qualified as a crime of violence under the Guideline's parallel provision at the time of Petitioner's sentencing hearing. *See James*, 550 U.S. at 203-04 (Florida attempted burglary); *United States v. Coleman*, 655 F.3d 480, 483-84 (6th Cir. 2011) (Ohio attempted third-degree burglary); *Skipper*, 552 F.3d at 492-93 (Ohio fourth-degree burglary); *United States v. Bureau*, 52 F.3d 584, 590-93 (6th Cir. 1995) (Tennessee attempted burglary); *United States v. Fish*, 928 F.2d 185, 188 (6th Cir. 1991) (Michigan attempted breaking and entering into a business); *United States v. Lane*, 909 F.2d 895, 902-03 (6th Cir. 1990) (Ohio attempted burglary). Tennessee aggravated burglary is not materially distinguishable from any of those other offenses for residual-clause purposes. *Accord United States v. Phillips*, 752 F.3d 1047, 1050–51 (6th Cir. 2014) (concluding that Florida third-degree burglary, which excluded occupied structures, posed the same degree of risk as generic burglary).

Because counsel cannot be characterized as deficient for failing to raise a meritless objection at sentencing or on appeal, *see, e.g.*, *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (counsel is not constitutionally ineffective for not pursuing a meritless claim), Petitioner's ineffective assistance of counsel claim based on the *Descamps* decision fails as a matter of law.

### 2. Propriety of Career Offender Designation After the *Johnson* Decision

The ACCA mandates a fifteen-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The statute defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). It was this third clause—the ACCA residual clause—that the Supreme Court deemed unconstitutionally vague in the *Johnson* decision. 135 S. Ct. at 2563.

On March 6, 2017, the Supreme Court held that the United States Sentencing Guidelines are "not amendable to vagueness challenges." *Beckles*, 137 S. Ct. at 894. As a result, the *Johnson* decision has no impact on the propriety of a career offender designation under Section 4B1.1.

## IV. CONCLUSION

For the reasons discussed above, Petitioner's § supplemented 2255 motion [Docs. 32, 44, 48] will be **DENIED** and **DISMISSED WITH PREJUDICE**. The United States' request to

defer resolution of the petition pending the *Beckles* decision [Doc. 51] will be **DENIED as moot**. The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

      **ORDER ACCORDINGLY.**

                                      */s/ Harry S. Mattice, Jr.*
                                  HARRY S. MATTICE, JR.
                                UNITED STATES DISTRICT JUDGE